Felix E. KASBAUM, Plaintiff-Respondent,

v.

Dr. George E. LUCIA and Madison General Hospital, Defendants-Appellants,

Dr. Richard A. GRAF, Defendant-Appellant. †

Court of Appeals

*No. 83–2105. Submitted on briefs July 8, 1985.—Decided October 3, 1985.*
(Also reported in 377 N.W.2d 183.)

---

† Petition to review denied.

15

16

For the defendants-appellants the cause was submitted on the briefs of *Eugene O. Gehl, Curtis C. Swanson* and *Paul W. Schwarzenbart* and *Brynelson, Herrick, Gehl & Bucaida* of Madison.

For the defendant-appellant Richard A. Graf the cause was submitted on the briefs of *Barbara L. Block* and *Boardman, Suhr, Curry & Field* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Roy N. Fine* and *Molbreak Law Office* of Madison.

Brief of amicus curiae was filed by *William C. Gleisner, III* and *David L. Nichols* and *Weiss, Steuer, Ber-*

*zowski, Brady & Donahue* of Milwaukee on behalf of the *Wisconsin Academy of Trial Lawyers.*

Before Gartzke, P.J., Dykman, J., and Eich, J.

EICH, J. Drs. George Lucia and Richard Graf and Madison General Hospital appeal from an order denying their motions for summary judgment dismissing this medical malpractice action. The issue is whether the trial court lacked jurisdiction because the controversy was not first heard and determined by a patients compensation panel as required by sec. 655.04(1)(b), Stats. We answer the question in the affirmative and therefore reverse.

■ In reviewing grants or denials of summary judgment, we employ the same methodology as the trial court. We look first to the pleadings to see whether the plaintiff has stated a claim and the defendant has joined the issue. If so, we consider the moving party's affidavits. If those affidavits state a prima facie case for relief or, as here, a prima facie defense, we examine the opposing affidavits to determine whether there are material issues of fact which would justify trial on the merits. *In re Cherokee Park Plat,* 113 Wis.2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). If the facts are undisputed, we proceed to decide the legal issues. Sec. 802.08(2), Stats. In this case the complaint adequately states the malpractice claim and appellants' answers join the issue. Appellants' affidavits in support of their motions allege a prima facie defense—noncompliance with sec. 655.04(1)(b), Stats.— and the opposing proofs raise no factual issues.

Kasbaum filed a claim with the patient's compensation panel on June 14, 1982, alleging that appellants were negligent in performing surgery on him three years earlier. The panel's attorney-chairperson ordered Kasbaum to name his medical experts by December 1, 1982. On December 2, 1982, Kasbaum's attorney informed the panel that he had not yet located any expert witnesses and re-

18

quested a second pre-hearing conference. The chairperson advised him to file appropriate motions for extension if he needed more time. Kasbaum did nothing further, and, on January 31 and February 9, 1983, appellants moved for summary judgment dismissing the claim. The motions were accompanied by physicians' affidavits stating that appellants met all applicable standards of care in their treatment of respondent. Kasbaum, opposing the motion, filed the affidavit of a physician indicating a present inability to ascertain any causal connection between the 1979 surgery and the condition of which respondent now complains.

The panel chairperson treated the affidavit as Kasbaum's designation of experts[1] and issued an order giving him until April 20, 1983, "to file affidavits from one or more of [sic] designated experts supporting causation or negligence . . . ." The order stated that if such affidavits were not filed, appellants' pending motions for summary judgment would be granted. Kasbaum did not file the required affidavits,[2] and on June 14, 1983, the chairperson signed an order granting the motions for summary judgment and dismissing respondent's claim "on its merits and with prejudice."

Kasbaum then commenced this action in circuit court. Appellants moved for summary judgment dismissing the action on grounds that the requirements of sec. 655.04(1)(b), Stats., had not been met. That section provides that "[n]o action shall be commenced in court unless the controversy has first been heard and findings and an

---

[1] Respondent also submitted the affidavit of his attorney stating that he had been discussing the case with another doctor who felt there might be some causal relationship between the surgery and appellant's current condition. The affidavit is nonevidentiary and was properly discounted by the panel.

[2] He filed only an attorney's affidavit referring to a report and letter from one of the doctors which were inconclusive on the questions of negligence and cause.

19

order have been made by the panel." The trial court concluded that the proceedings before the panel satisfied the statute and denied the motions.

In *Mazurek v. Miller,* 100 Wis.2d 426, 431 n.3, 303 N.W.2d 122, 125 n.3 (Ct. App.), *cert. denied,* 454 U.S. 896 (1981), we stated that a plaintiff whose claim was dismissed by the panel as a sanction for failure to comply with a discovery order—without any hearing on the merits of the controversy—did not have an automatic right to trial de novo in circuit court. We noted that granting access to courts under such circumstances would be inimical. to the recognized goals of ch. 655, Stats., in that it would encourage litigants to bypass the panels by refusing to cooperate with them. *Ibid.* Appellants argue that *Mazurek* is controlling because the panel dismissed respondent's case as a sanction for his failure to file the requested proofs. We disagree. The dismissal was not a sanction. Kasbaum was not penalized for his failure to name experts or for his disobedience, flagrant or otherwise, of any order. He was directed to show the panel, by affidavit, that he had at least a bare bones *malpractice claim,* and he was unable to do so. Testimony from medical experts is essential to establish a cause of action for medical malpractice.[3] *Christianson v. Downs,* 90 Wis.2d 332, 338, 279 N.W.2d 918, 921 (1979). Because respondent had no such evidence to offer, the panel ruled that his claim should not be allowed to proceed.

The trial court concluded that the panel had "reached the merits" of the case, and thus the prerequisites for trial de novo in circuit court under sec. 655.04(1)(b), Stats., had

---

[3] In some instances, *res ipsa loquitur* inferences may be available to a malpractice claimant. *Francois v. Mokrohisky,* 67 Wis.2d 196, 202–04, 226 N.W.2d 470, 472–73 (1975). That is the unusual case, however, and respondent has not suggested that the doctrine is applicable here.

been met, relying on the following statement in *Mortenson v. Miller*, 99 Wis.2d 209, 219, 298 N.W.2d 546, 551 (1980):

> Chapter 655 requires as a prerequisite to a lawsuit that there be an order by a panel. However the order need not be on the merits. Sec. 655.19, Stats. The issuance of an order by the panel in the instant case finally disposing of the matter before the panel entitles plaintiff to pursue his claim in court.

The statement, however, is *dicta*.[4] Indeed, we have since stated that we do not read *Mortenson* as holding that all orders terminating panel proceedings automatically entitle petitioners to pursue their claims in court. *Mazurek*, 100 Wis.2d at 431 n.3, 303 N.W.2d at 125 n.3.

One of the primary purposes of the patients compensation law is to "weed out" frivolous claims and provide a means whereby persons justly entitled to compensation can secure prompt disposition of their claims. *State ex rel. Strykowski v. Wilkie*, 81 Wis.2d 491, 523, 261 N.W.2d 434, 449 (1978). Under the law, a panel is convened to hear the controversy, to make findings "upon the ultimate facts involved in the case," and to determine the rights of the parties—specifically whether the health care provider

---

[4] The sole issue in *Mortenson* was whether a claim filed with the panel tolled the statute of limitations. The panel dismissed the claim on jurisdictional grounds before any hearing on the merits, and the plaintiff commenced an action in circuit court. The circuit court dismissed the action grounds that it was barred by the three-year statute of limitations on medical malpractice actions. The supreme court reversed, holding that plaintiff's submission of the claim to the panel tolled the statute. The question then arose whether the case should be remanded to the circuit court or the panel. Because the matter was before an informal rather than a formal panel, the court stated that a decision on the merits "would have no effect on the circuit court proceedings" and made the quoted statement. *Id.,* 99 Wis.2d at 219, 298 N.W.2d at 551.

21

was negligent, whether such negligence, if found, was a cause of injury, and the monetary damages to which the claimant may be entitled. *Id.* at 527, 261 N.W.2d at 451; sec. 655.065, Stats. Then, after "the controversy has . . . been heard and findings and an order *. . .* made by the panel," the claimant may sue in court. Sec. 655.04(1)(b). No court action may be maintained, however, "until the matter has been reviewed by a . . . panel." *Id.* at 499, 261 N.W.2d at 438.

"The controversy," which must be heard and determined by the panel under sec. 655.04(1)(b), Stats., can have only one meaning. It is the dispute between the parties—the "controversy" arising out of the claimant's allegations of negligence, causation and damages, and the physician's denials and defenses. Here, the only matter decided by the panel was that dismissal was warranted because of Kasbaum's acknowledged inability to produce the expert evidence necessary to state a prima facie claim for relief.

Kasbaum does not argue that the panel's decision was legally flawed. Indeed, he concedes that he could not make a prima facie showing before the panel that he had a valid claim. He argues, however, that he need not do so. He contends that he may decline to present any evidence whatsoever before the panel, at any stage of its proceedings, without *forfeiting his ticket to circuit court.* Were we to adopt this line of reasoning, we would be doing more than mere violence to sec. 655.04(1)(b), Stats; we would be obliterating it.

As indicated, the panel granted summary judgment when appellant was unable to provide affidavits stating any facts creating a triable issue or otherwise meeting the prima facie defense raised in the respondents' affidavits. The rules of civil procedure which include the summary judgment provisions of sec. 802.08, Stats., are applicable

22

to proceedings before the panel. *Mazurek,* 100 Wis.2d at 432, 303 N.W.2d at 125–26; sec. 655.17(1). Summary judgment is an appropriate means of weeding out meritless claims. Where, as here, it does just that, and the claimant is nonetheless allowed to pursue the claim in court, not only is the utility of summary judgment lost, the claim is not weeded out, it is encouraged. Sitting on one's hands becomes a means of wholly circumventing the panel and thwarting the aims of ch. 655.

The "controversy," as that term appears in sec. 655.04(1)(b), Stats., was neither heard nor determined by the panel. The proceedings were summarily dismissed when Kasbaum was unable to assert the existence of any controverted facts as to negligence and cause. They were dismissed because he could not make even a prima facie showing that any controversy existed.

■ The Wisconsin Academy of Trial Lawyers, appearing *amicus curiae,* points out that ch. 655, Stats., survived a constitutional challenge (grounded upon claims of improper delegation of judicial powers) largely because claimants are "not only . . . afforded a judicial review of the determination of the panel, they are entitled to a trial de novo in court." *Strykowski,* 81 Wis.2d at 521, 261 N.W.2d at 448. The Academy asserts that, by overruling the trial court's denial of summary judgment, we would be impermissibly locking the door to the courthouse. We disagree. Like determinations of other administrative bodies, the panel's decision to dismiss prior to hearing the evidence may be reviewed by certiorari or other appropriate writ. *State ex rel. Kaczkowski v. Fire & Police Comm.,* 33 Wis.2d 488, 501, 148 N.W.2d 44, 50, *cert. denied sub nom.,* 389 U.S. 848 (1967). *See also Mazurek,* 100 Wis.2d at 436, 303 N.W.2d at 127 (availability of judicial review satisfies due process where panel dismissed a claim as a discovery sanction).

■

As for the right to a trial de novo, we note that the underlying purpose of summary judgment procedure is to avoid trials where there is nothing to try. *Hunter of Wisconsin, Inc. v. Hamilton,* 101 Wis.2d 460, 470, 304 N.W.2d 752, 757 (1981). It is designed to eliminate unnecessary trials and is a determination that the parties have not been able to present a triable issue. *Maynard v. Port Publications, Inc.,* 98 Wis.2d 555, 562, 297 N.W.2d 500, 504 (1980). That is the case here. Kasbaum's claim was defeated because he was unable to make a prima facie showing to the panel that any triable issue existed. In cases where the panel determines that a claimant has not made such a showing, construing sec. 655.04(1)(b), Stats., so as to limit him or her to review of that determination via traditional avenues of judicial review, rather than entitlement to a trial de novo in circuit court, does not violate constitutional delegation of powers principles.

■

Instead of seeking judicial review of the panel's prehearing dismissal decision, Kasbaum commenced a de novo action in circuit court. Because the controversy had been neither heard nor decided by the panel, the jurisdictional prerequisites of sec. 655.04(1)(b), Stats., had not been met, and the trial court erroneously denied the appellants' motions for summary judgment.

*By the Court.*—Order reversed.